UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCUS D. FORD,

Plaintiff,

v.

HEIDI WASHINGTON et al.,

Defendants.

Case No. 1:26-cv-686

Honorable Robert J. Jonker

# OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and DRF Food Steward Unknown Darling, described as a non-custody MDOC employee. (*Id.*, PageID.2.)

In Plaintiff's complaint, he alleges that on July 19, 2025, he was "working in the facility kitchen . . . as he did on a daily basis."[1] (*Id.*, PageID.4.) Defendant Darling approached Plaintiff and "informed [Plaintiff] that there appeared to be taco meat missing." (*Id.*) Plaintiff asked Defendant Darling "what she was insinuating," but Defendant Darling did not respond. (*Id.*) Plaintiff "returned to organizing [food] trays when all of a sudden he felt something begin to violently jerk and yank on his pants leg." (*Id.*) Plaintiff claims that at that time, Defendant Darling was screaming, "What's in your pants?" (*Id.*, PageID.5.) Plaintiff "uttered," "Are you f[***]ing crazy?" and asked Defendant Darling "why she assaulted him." (*Id.*) Plaintiff then told Defendant Darling: "[Y]ou can't touch me, you're supposed to have a custody officer shake me down if you think I [have] done something wrong." (*Id.*)

Thereafter, Defendant Darling issued Plaintiff a misconduct report for possession of stolen property and theft, and Plaintiff claims that the misconduct report had an incorrect date for the incident. (*Id.*) Plaintiff also asserts that no contraband was found on him. (*Id.*) Subsequently, camera footage was reviewed and Plaintiff was found not guilty of the alleged misconduct on July 20, 2025. (*Id.*, PageID.6.) Plaintiff alleges that "after a review of the misconduct, it is apparent that [Defendant] Darling fabricated the events." (*Id.*, PageID.5.)

Plaintiff claims that he "sustained a leg injury during the incident" and still suffers frequent pain in his leg. (*Id.*, PageID.6.) Plaintiff also "suffers from a degree of [post-traumatic stress

---

[1] In this opinion, the Court corrects the punctuation and grammar in quotations from Plaintiff's filings.

disorder] (PTSD) as a result of the incident," and "lives in constant fear of being assaulted by MDOC staff." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.3.) Plaintiff seeks injunctive relief and monetary damages.

**II. Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendant Washington**

Plaintiff lists MDOC Director Washington as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant Washington was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Washington in the body of his complaint. (*See generally* Compl., ECF No. 1.) Plaintiff's claims against Defendant Washington therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and

are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Further, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's complaint will be dismissed for failure to state a claim against Defendant Washington.

**B. Defendant Darling**

**1. First Amendment Retaliation Claim**

Plaintiff alleges that his First Amendment rights were violated. (Compl., ECF No. 1, PageID.3.) The Court construes Plaintiff's complaint to raise a claim that his right to be free from retaliation under the First Amendment was violated when Defendant Darling issued Plaintiff a misconduct report.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**a. Protected Conduct**

With respect to the first element of a First Amendment retaliation claim, the Court construes Plaintiff's allegation that his verbal responses to Defendant Darling touching him as verbal complaints. A prisoner has a right to file "non-frivolous" grievances against prison officials

on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff alleges that after Defendant Darling jerked and yanked on his pants leg, Plaintiff said, "Are you f[***]ing crazy?" and objected to Defendant Darling searching him instead of a custody officer. (Compl., ECF No. 1, PageID.5.)

At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff's statements to Defendant Darling were protected conduct for the purposes of his First Amendment claim.

**b. Adverse Action and Retaliatory Motive**

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

Plaintiff alleges that Defendant Darling issued Plaintiff a misconduct report for possession of stolen property and theft because she believed that Plaintiff had stolen food while working in the prison's kitchen. (Compl., ECF No. 1, PageID.5.) The issuance of a misconduct ticket constitutes adverse action. However, as explained below, Plaintiff's retaliation claim, premised on Plaintiff's oral complaint as the protected conduct, fails at the third element because he fails to allege any facts to suggest that the misconduct report for possession of stolen property was issued because Plaintiff had verbally complained to Defendant Darling. Specifically, Plaintiff's

allegations show that *before* Plaintiff engaged in any protected conduct, Defendant Darling suspected Plaintiff of stealing taco meat. (*Id*., PageID.4.) Plaintiff alleges no facts to indicate that his comments to Defendant Darling were the motivating factor in her issuance of the misconduct report. Instead, Plaintiff's own allegations demonstrate that Defendant Darling issued the misconduct report to Plaintiff because she thought he had stolen food, and his allegations show that Defendant Darling held this belief *before* Plaintiff engaged in protected conduct by objecting to her search. (*See id.*, PageID.5.)

Moreover, Plaintiff's allegations, at most, suggest temporal proximity between Plaintiff's verbal statement and Defendant Darling's issuance of the misconduct report; however, the Sixth Circuit has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). As discussed above, in this action, Plaintiff's allegations show that Defendant Darling believed that Plaintiff had stolen food, and for that reason, she issued Plaintiff a misconduct report for possession of stolen property and theft. Plaintiff fails to allege any facts to show Defendant Darling's motive in issuing the misconduct report besides her belief that Plaintiff stole food. Under these circumstances, despite the temporal proximity between the verbal complaint and the issuance of the misconduct report, Plaintiff alleges no *facts* from which

to reasonably infer that Defendant Darling's issuance of the misconduct charge was motivated by any protected conduct. And, Plaintiff's vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claim premised on Defendant Darling's issuance of a misbehavior report will be dismissed for failure to state a claim.

### 2. Eighth Amendment Excessive Force Claim

Plaintiff avers that his Eighth Amendment rights were violated by Defendant Darling. (Compl., ECF No. 1, PageID.3.) The Court construes Plaintiff's complaint to raise an excessive force claim against Defendant Darling regarding her actions on July 19, 2025, while looking for food on Plaintiff's person, which she believed Plaintiff had stolen.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under

common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

In this action, Plaintiff claims that after Defendant Darling suspected him of stealing food, she began to "violently jerk and yank on [Plaintiff's] pants leg." (Compl., ECF No.1, PageID.4.) Plaintiff alleges in a conclusory manner that Defendant Darling was "crouched down beside [Plaintiff], actively assaulting him," and screaming, "What's in your pants?"; however, as

explained below, Plaintiff's vague and conclusory allegations of "assault," which are unsupported by *facts*, are insufficient to state a claim for excessive force. Specifically, Plaintiff's *factual* allegations show only that Defendant Darling jerked and yanked on Plaintiff's pants leg, not his actual leg, looking for the stolen food. Plaintiff states, in a conclusory manner, that Defendant Darling was "actively assaulting him," but fails to provide any details regarding the duration or nature of the assault, or if the type of force used by Defendant Darling was excessive. For example, Plaintiff provides no details whether Defendant Darling struck, kicked, scratched, or used any objects that could cause Plaintiff's leg injury or that her actions were malicious in nature. In short, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. Furthermore, Plaintiff claims that Defendant Darling's actions were improper because Defendant Darling was "supposed to have a custody officer shake [Plaintiff] down," suggesting that Defendant Darling's action was analogous to a pat-down search and that any force used by Defendant Darling was not applied maliciously and sadistically, but in a pat-frisk nature as an attempt to recover stolen food. *See Hudson*, 503 U.S. at 7.

Therefore, because Plaintiff fails to show that Defendant Darling's actions constituted a malicious or sadistic use of force, Plaintiff fails to state an Eighth Amendment claim against Defendant Darling. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed for failure to state a claim.

### 3. Fourteenth Amendment Due Process Claim

Plaintiff alleges his Fourteenth Amendment rights were violated but does indicate the claims he intended to bring. (*See* Compl., ECF No. 1, PageID.3.) The Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim against Defendant Darling as related to her issuance of the misconduct report for possession of stolen property and theft.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the

duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. As an initial matter, because Plaintiff does not allege that he was placed in segregation or that he received any sanctions as a result of the misconduct charge, he necessarily fails to show that he received any sanctions that implicate the Due Process Clause of the Fourteenth Amendment. And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Therefore, Plaintiff has failed to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or that any resulting conditions constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87.

Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to

him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. Here, Plaintiff was found not guilty of the misconduct charge, showing that Plaintiff was provided with due process sufficient to allow him to respond to the spurious charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Accordingly, Plaintiff's Fourteenth Amendment due process claim against Defendant Darling regarding her issuance of a misconduct report to Plaintiff will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.

Dated: September 2, 2026

/s/ Robert J. Jonker
Robert J. Jonker
United States District Judge